UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| DAVID THOMAS TERWILLEGER, Plaintiff, | Case No. 1:18-cv-11<br>Barrett, J.<br>Litkovitz, M.J. |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, Defendant. | **REPORT AND RECOMMENDATION** |

Plaintiff, proceeding pro se, brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's request to withdraw an application for retirement insurance benefits. This matter is before the Court on plaintiff's Statement of Errors (Doc. 13), the Commissioner's response in opposition (Doc. 21), and plaintiff's reply memorandum (Doc. 22).

**I. Background**

Workers who apply for old-age or retirement insurance benefits at full retirement age receive a full benefit rate. *See* 42 U.S.C. § 402(a); 20 C.F.R. § 404.409. Those who choose to apply for such benefits between age 62 and full retirement age receive benefit amounts reduced by a certain percentage for each month they collect benefits before full retirement age. *See* 42 U.S.C. § 402(q); 20 C.F.R. § 404.410. Conversely, workers who apply between full retirement age and age 70 receive amounts increased by a certain percentage for each month they forego benefit payments after full retirement age. *See* 42 U.S.C. § 402(w); 20 C.F.R. § 404.313. In

other words, a worker can increase his or her monthly retirement benefit by delaying receipt of such benefits until or after full retirement age.

Workers who have applied for and are receiving retirement benefits may reconsider having applied for such benefits due to income from continued work. Work-related income may affect the annual earnings limit for retirement benefits and require the withholding of such benefits. "Although the [Social Security] Act does not include a specific provision concerning withdrawal of an application, [the Social Security Administration has] a longstanding policy that allows workers to withdraw benefit applications." *See* Amendments to Regulations Regarding Withdrawal of Applications and Voluntary Suspension of Benefits, 75 FR 76256-01, 2010 WL 4956293 (Dec. 8, 2010). Prior to December 8, 2010, there was no limit to the number of times a worker could withdraw an application for retirement insurance benefits. On December 8, 2010, the Social Security Administration implemented a new rule limiting a worker's ability to withdraw an application to once per the lifetime of the worker.

This case involves a worker who prior to the new rule withdrew an application for retirement benefits, subsequently reapplied, and was granted such benefits. When the worker requested to withdraw his second application after the new rule went into effect, the new rule was applied to him, resulting in the denial of his withdrawal request as he had previously withdrawn an application for retirement benefits. The issue is whether the application of the new rule to that worker – the plaintiff in this case – amounts to impermissible retroactive rulemaking barred by the United States Supreme Court. For the reasons that follow, the Court finds it does and recommends the decision of the Commissioner be reversed.

## II. Statement of Facts

Plaintiff filed his first application for retirement insurance benefits in March 2009. (Tr. 40-41). His application was granted and plaintiff was notified that he would begin receiving his monthly retirement benefits in July 2009 (the month after he turned 62 years old). (Tr. 42-44). In April 2009, plaintiff's son filed an application for child's insurance benefits based on his father's record (Tr. 45-46), which was granted in July 2009. (Tr. 52-54).

In December 2009, plaintiff withdrew his application for retirement benefits and agreed to pay back the total of $10,260.00 he and his son had received in benefits. (Tr. 55-60, 61-62). Plaintiff paid back the benefits and Social Security approved plaintiff's request to withdraw his application on April 11, 2010. (Tr. 64-65). The Social Security notice approving plaintiff's request advised him that he could cancel his withdrawal by filing a written request within 60 days after the date of the notice or he could later file a new application. (*Id.*).

Plaintiff chose the latter option. On April 21, 2010, plaintiff filed a new application for retirement benefits, requesting back benefits to January 2010. (Tr. 66-67). Plaintiff's second application for retirement benefits was granted on April 26, 2010. (Tr. 73-75).

On January 27, 2011, plaintiff filed a request to withdraw his April 2010 application for retirement benefits. (Tr. 76-77). He checked the box on the withdrawal form that stated, "I intend to continue working. (I have been advised of the alternatives to withdrawal for applicants under full retirement age and still wish to withdraw my application.)" (*Id.*). Plaintiff added the following handwritten explanation for the withdrawal request:

> I have had extreme difficulty obtaining and keeping employment in the past two years, but have finally located a job that I think will last. I am aware that I have withdrawn a previous application but that was also for employment (which did

3

not work out). At the time I submitted this application in April 2010 I was told there was no prohibitions on withdrawing an application more than once. I hereby request consideration under the rules that existed at that time.

(*Id.*). At that time, plaintiff also returned $15,300 to the Social Security Administration for the prior benefits he had received. (Tr. 78).

Plaintiff's request to withdraw his second application for retirement benefits was initially denied based on amendments to 20 C.F.R. § 640, the Social Security regulation governing the withdrawal of retirement benefits applications.[1] (Tr. 79-83). Prior to the amendments, there was no limit to the number of times an individual was permitted to apply for and then withdraw an application for retirement benefits. Under SSA 2009-0073, Amendments to Regulations Regarding Withdrawal of Applications and Voluntary Suspension of Benefits, 75 FR 76256-01, 2010 WL 4956293 (Dec. 8, 2010), the existing regulation was modified to establish a 12-month time limit for the withdrawal of old-age benefits applications and to allow only one application withdrawal per lifetime. Pursuant to the Administrative Procedure Act (APA), this new regulation was published in the Federal Register on December 8, 2010, with a public comment period ending on February 7, 2011. However, the effective date of the regulation was December

---

[1] The regulation provides in pertinent part:

> Request for withdrawal filed after a determination is made. An application may be withdrawn after we make a determination on it if—
> (1) The conditions in paragraph (a) of this section are met;
> (2) Any other person whose entitlement would be rendered erroneous because of the withdrawal consents in writing to it. . . . ; and
> (3) All benefits already paid based on the application being withdrawn are repaid or we are satisfied that they will be repaid.
> (4) Old age benefits. An old age benefit application may be withdrawn if, in addition to the requirements of this section—
> > (i) The request for withdrawal is filed within 12 months of the first month of entitlement; and
> > (ii) The claimant has not previously withdrawn an application for old age benefits.

20 C.F.R. § 404.640(b).

4

8, 2010, the same date the changes were published. The Social Security Administration noted that recent media articles promoted the use of the process for withdrawing a retirement benefits application as a means for retirees to increase their benefits or acquire an "interest-free loan." The Administration summarized its justification for the immediate policy change as follows:

> We are under a clear congressional mandate to protect the Trust Funds. It is crucial that we change our current policies that have the effect of allowing beneficiaries to withdraw applications or suspend benefits and use benefits from the Trust Funds as something akin to an interest-free loan. At the same time, we also need to ensure that beneficiaries who experience an unforeseen change of circumstances and who may need to withdraw an application or suspend benefits are able to do so. Establishing limitations on the number and scope of application withdrawals and on the period for which you can voluntarily suspend your benefits for purposes of receiving delayed retirement credits will help prevent abuse and maintain flexibility for beneficiaries.

Amendments to Regulations Regarding Withdrawal of Applications and Voluntary Suspension of Benefits, 75 FR 76256-01, 2010 WL 4956293 (Dec. 8, 2010). In explaining its justification for proceeding without prior public notice and comment, the Social Security Administration stated:

> Because these policies have the potential for abuse, any delay in their modification through the revision of our regulations could result in the harm that we are trying to prevent. Providing prior public notice may act as a catalyst for more applicants and beneficiaries to request withdrawal of their applications. Accordingly, we find that prior public comment would be contrary to the public interest. However, we are inviting public comment on the final rule and will consider any substantive comments we receive within 60 days of the publication of this final rule.
>
> In addition, for the reasons cited above, we also find good cause for dispensing with the 30-day delay in the effective date of this final rule. We find that it is contrary to the public interest to delay the effective date of our rule changes because any delay in their modification could result in the harm that we are trying to prevent. Accordingly, we are making this final rule effective upon publication.

*Id.*

5

Plaintiff requested reconsideration of the denial of his request to withdraw his application, alleging that he was not notified of the rule change prior to it taking effect and had he "known that this change was going to be implemented in December 2010 [he] would have made [his] request to withdraw prior to that date." (Tr. 84-85). Plaintiff's request for reconsideration was denied.

Plaintiff, proceeding without counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Kevin Detherage. On February 5, 2016, the ALJ issued a decision denying plaintiff's request to withdraw his retirement benefits application. The ALJ determined he was legally bound by the Social Security regulations and under 20 C.F.R. § 640(b)(4)(ii), an individual is allowed to withdraw an application for old-age benefits only once in his or her lifetime. The ALJ concluded that because plaintiff had previously withdrawn an application for retirement benefits, his January 2011 request to withdraw his second retirement benefits application was properly denied under the governing regulation. (Tr. 16).

At the hearing, plaintiff argued that the decision to make SSA 2009-0073 retroactive was in error, and had he been informed of the rule change he would have filed his request to withdraw his application prior to the effective date of December 8, 2010. Instead, once he discovered the potential rule change and comment period deadline of February 7, 2011, he requested a withdrawal of his application in January 2011. The ALJ addressed plaintiff's arguments as follows:

> Generally, an agency must provide prior notice and opportunity for public comment before issuing a final rule. The Administrative Procedures Act (APA) explains an agency may find good cause exists for not allowing a public comment period when it is impracticable, unnecessary, or contrary to public interest (5 U.S. Code § 553(b)(B)).

6

In the instant case, SSA 2009-0073 acknowledges that generally the Agency must provide prior notice and opportunity for public comment before issuing a final rule. However, SSA 2009-0073 goes on to explain that the APA provides exceptions to its notice and public comments procedures when an agency finds good cause for dispensing with such procedures when impractical, unnecessary, or contrary to public interest. The Agency found good cause in this amendment as the changes were made to prevent retirees from taking "interest free loans." They explain the potential for abuse and misuse of the trust fund dictates that delays in implementing the amendment would cause further harm. Further, it was explained that prior notice of the rule change would have been a catalyst for more applicants and beneficiaries to request withdrawal of their applications. Consequently, the Agency found that public comment or delay in enacting the amendments would have resulted in further harm and been contrary to public interest (SSA 2009-0073, per https://www.federalregister.gov/articles/2010/12/08/ 2010-30868/amendments-to-regulations-regarding-withdrawal-of-applications-and-voluntary-suspension-of-benefits, last viewed on January 27, 2016).

The Agency has adequately explained its position in foregoing public comment or notice before implementing the rule change to 20 CFR 404.640. Undoubtedly, this is an unfair result for the claimant, but the claimant's situation and argument that he would have withdrawn his application if he had known of the upcoming rule change is exactly what the Agency was trying to prevent. As I indicated above, my authority as an Administrative Law Judge is limited, and I am bound by Social Security Regulations. Therefore, I find that the lower level's determination is correct and the claimant cannot withdraw his second application for retirement benefits.

(Tr. 16). Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

**II. Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### III. The Parties' Arguments

Plaintiff alleges that the Social Security Administration's amendment and implementation of 20 C.F.R. § 404.640 amounts to impermissible retroactive rulemaking that is not specifically authorized by Congress and the regulation contains no provision to grandfather existing beneficiaries. Instead of waiting for the conclusion of the February 2011 comment period, upon which plaintiff states he relied in submitting his January 2011 request to withdraw his retirement benefits application, the regulation was made effective December 8, 2010, the date

8

the amended regulation was published. Plaintiff also alleges that the regulation is impermissibly ambiguous because it limits withdrawals to a single application, even though under that same regulation a previously withdrawn application is "considered as though it was never filed." (Doc. 13 at 4, comparing 20 C.F.R. § 404.640(b)(4)(ii) with 20 C.F.R. § 404.640(d)).[2] In other words, if plaintiff's first application is "considered as though it was never filed" under 20 C.F.R. § 404.640(d), he argues he should not be limited to withdrawing his numerically second-in-time application under 20 C.F.R. § 404.640(b)(4)(ii). Plaintiff argues that any ambiguity within the regulation should be construed in his favor.

The Commissioner contends that although the new rule took effect the date it was published in the Federal Register and before the expiration of the public comment period, the Social Security Administration has shown good cause under the APA, 5 U.S.C. § 553, for issuing the interim final rule in December 2010. (Doc. 21 at 12). Although agencies are generally required to give notice of proposed rulemaking by publishing the proposed rule in the Federal Register, this requirement does not apply "when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. § 553(b)(3)(B). In addition, though an agency typically must publish the proposed rule "not less than 30 days before its effective date," the "good cause" exception applies to this notice requirement. *See* 5 U.S.C. § 553(d)(3). The Commissioner asserts the Administration properly invoked the public interest prong of the good cause exception in implementing the amended

---

[2] 20 C.F.R. § 404.640(d) provides, "Effect of withdrawal. If we approve a request to withdraw an application, the application will be considered as though it was never filed. . . ."

9

regulation. The Commissioner further asserts that the amended regulation is not impermissibly retroactive simply because it applies to events that predated the rule. Lastly, the Commissioner alleges that plaintiff's argument concerning the alleged ambiguity in the regulation does not support a remand in this case.

**IV. Resolution**

The Court finds the Social Security Administration's application of the amended withdrawal regulation to plaintiff's request to withdraw his second retirement benefits application is impermissibly retroactive. The Supreme Court has determined that "[r]etroactivity is not favored in the law" and "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 209 (1988). Unless Congress gives an agency express authorization to regulate retroactively, it is presumed that congressional delegation of rulemaking authority permits an agency to regulate prospectively only. *Henry Ford Health Sys. v. Dep't of Health & Human Servs.*, 654 F.3d 660, 667 (6th Cir. 2011) (citing *Bowen*, 488 U.S. at 208). The Social Security Act authorizes the Social Security Administration to "adopt reasonable and proper rules and regulations," but it does not expressly authorize retroactive rule-making. *See* 42 U.S.C. § 405(a); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) ("The [Social Security] Act does not generally give the SSA the power to promulgate retroactive regulations."). *See also Frost v. Barnhart*, 314 F.3d 359, 371 (9th Cir. 2002) ("the Social Security Act's grant of authority to the Secretary of Health and Human Services to promulgate regulations . . . does not affirmatively grant [the Secretary] authority to make those regulations retroactive"). Because the Social Security Administration does not have the authority to

promulgate retroactive regulations, the Court must next examine whether the amended regulation "operates retroactively so as to invoke the Supreme Court's presumption against retroactivity." *Combs*, 459 F.3d at 645.

A regulation "does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the [regulation's] enactment, or upsets expectations based in prior law." *Landgraf v. USI Film Prod.*, 511 U.S. 244, 269 (1994) (citation omitted). Instead, courts must determine whether the new rule "attaches new legal consequences to events completed before its enactment," *Id.* at 270, including "whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* at 280. Courts should be guided by "considerations of fair notice, reasonable reliance, and settled expectations" in making this determination. *Id.*

These factors weigh in favor of a finding that the regulatory change implemented by the Social Security Administration operates retroactively in this case. At the time plaintiff's request to withdraw his first application for benefits was granted, the Social Security regulations did not limit the number or timing of requests to withdraw a retirement benefits application. In fact, when plaintiff was notified his first request to withdraw his application was granted, he was notified, "Your request for withdrawal *affects only the application being withdrawn. You can later file a new application.*" (Tr. 64) (emphasis added). Plaintiff reasonably relied on this information and subsequently filed a new application for retirement benefits, with the reasonable expectation that he could withdraw his application at any time. However, on the date that the Social Security Administration implemented SSA 2009-0073, plaintiff immediately lost the right

11

to withdraw his second application because the Administration attached legal consequences to plaintiff's withdrawal of his first application – making the first withdrawal the one and only withdrawal plaintiff was permitted in his lifetime – which was a consequence that did not exist at the time plaintiff withdrew his first application. The amended regulation, which limits plaintiff to a single withdrawal of a retirement benefits application per lifetime, operates retroactively because it impaired rights plaintiff possessed when he filed his second application for benefits (pre-December 2010 amendment), to wit: the right to withdraw his second application and thereby preserve his eligibility to later receive unreduced retirement benefits by delaying his retirement.

The Court's own research has identified only one other court to address the amendment to Social Security's withdrawal regulation, which determined that the amended regulation was impermissibly retroactive as applied to the plaintiff. In *Low v. Berryhill*, 334 F. Supp.3d 1165, 1167 (W.D. Wash. 2018), the court examined the 12-month time limit for withdrawing an application for retirement benefits imposed by the amended regulation. The plaintiff in *Low* had applied for retirement benefits in 2009, prior to the December 2010 amendment of 20 C.F.R. § 404.640. In 2012, the plaintiff filed a request for withdrawal of her application for retirement benefits. The plaintiff's request was denied pursuant to § 404.640 because her withdrawal request was received more than 12 months after she was eligible for and began receiving benefits. The *Low* court determined that § 404.640(b)(4)'s 12-month time limit was impermissibly retroactive as applied to the plaintiff. The court reasoned that the new regulation altered the legal consequences of the plaintiff's prior actions:

12

> When she began receiving retirement benefits, Plaintiff could withdraw her application at any time. Plaintiff could decide to withdraw her application and repay the early retirement benefits she had received, preserving her eligibility to later receive unreduced retirement benefits. . . . But once the SSA promulgated its 12-month withdrawal time limit, Plaintiff immediately lost the ability to withdraw her application. *See* 20 C.F.R. 404.640(b)(4)(i). She had no notice and no opportunity to conform her actions based on her settled expectations of the law. The SSA's 12-month time limit was therefore impermissibly retroactive as applied to Plaintiff.

*Low*, 334 F. Supp.3d at 1170-71.

Similarly, plaintiff here immediately lost the legal right to withdraw his application for retirement benefits based on the consequences of having previously filed and withdrawn his first application. Plaintiff did not receive prior notice of the one-withdrawal-per-lifetime rule, nor was he given the opportunity to conform his actions based on his settled expectations of the law. Indeed, the very purpose of making the amended regulation effective on the date it was published, and not after the normal 30-day period, was to foreclose beneficiaries like plaintiff from exercising their right to withdraw a subsequent application for benefits. No matter how salutary the Administration's goal in stopping the pre-December 2010 practice of offering so-called "interest-free loans" through the then-existing withdrawal process, the application of the amended regulation to plaintiff altered the legal consequences of plaintiff's withdrawal of his first application for retirement benefits, which occurred prior to the amendment. As applied to plaintiff, the amendment constitutes an impermissible retroactive regulation.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **REVERSED** and **REMANDED** to permit plaintiff

to withdraw his application for retirement benefits.[3]

Date: 1/28/19

Karen L. Litkovitz
United States Magistrate Judge

---

[3] Because the Court determines that the application of amended § 404.640(b)(4)(ii) to plaintiff amounts to impermissible retroactive rulemaking, the Court need not address plaintiff's alternative arguments for relief.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DAVID THOMAS TERWILLEGER,
Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
Defendant.

Case No. 1:18-cv-11
Barrett, J.
Litkovitz, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).